IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROBERT J. BARNETT, DDS and STEPHEN D. ZELLER, DDS,<br><br>      **Plaintiffs,**<br><br>      v.<br><br>**GREAT PLAINS TRUST COMPANY and KORNITZER CAPITAL MANAGEMENT, INC.,**<br><br>      **Defendants.** | Case No. 17-2154-CM |

## MEMORANDUM AND ORDER

Plaintiffs Robert J. Barnett, DDS and Stephen D. Zeller, DDS, as trustees and fiduciaries of retirement plans sponsored by their respective dental practices, filed this action against defendants Great Plains Trust Company ("Great Plains") and Kornitzer Capital Management, Inc. ("Kornitzer"), alleging violations of the Employee Retirement Income Security Act ("ERISA") and state law claims for Negligent Misrepresentation and Breach of Contract.  The matter is before the court on defendant Kornitzer's Motion to Dismiss (Doc. 34) and defendant Great Plains' Motion to Dismiss Counts III and IV (Doc. 36).

### I.  Background

The following facts are summarized from plaintiffs' First Amended Complaint (Doc. 29).  On August 20, 1991, plaintiff Barnett—a dentist practicing in Hot Springs, Arkansas—opened a retirement account for his dental practice with defendant Great Plains.  Under this agreement, defendant Great Plains was appointed the "Investment Manager" and defendant Kornitzer was appointed as an "Investment Advisor."  With respect to Kornitzer's role as Investment Advisor, plaintiff Barnett's agreement with defendant Great Plains provided that Kornitzer would receive

".00125 of the closing market value of assets" each quarter for its investment advice.  (Doc. 29-1, at 5.) Plaintiff Barnett also executed Statements of Investment Direction that directed the allocations of the retirement plan among eight Collective Trusts Funds, and that half of the total principal of the plan was to be invested in two Collective Trust Funds: the "Equity Fund" and the "Fixed Fund."

On September 19, 2015, Ryan Thompson, on behalf of defendants, contacted plaintiff Zeller—a dentist in Topeka, Kansas—to solicit the investment services offered by defendants.  Thompson stated that under defendant Kornitzer's strategy, defendant Great Plains offered investments with less volatility compared to other market funds.  Thompson also discussed defendants' connection with Lions Gate Entertainment Corp. ("Lions Gate"):

> Yes we do have some convertible and strait fixed Lionsgate bonds in our Fixed Fund, among many other traditional fixed bonds. Again, there is no Lionsgate stock in the Fixed Fund. Your advisor tells you John [Kornitzer] is crazy and owns all this Lionsgate and it's so risky… They don't know what they are talking about. For instance, the GPTC Collective Fixed Fund was up 4.04% at the end of August (see second attachment). Lionsgate stock was up 14.58% through the end of August this year. CLEARLY, the exposure to the Lionsgate bonds that the Fund holds doesn't greatly impact the overall performance of that Fund.
>
> Otherwise we would be up a hell of a lot more! I'll tell you right now, there are great things in store for that company in the near future, and shareholders of that Fund are going to benefit tremendously, so I would move your money sooner rather than later.

(Doc 29, at 4–5.)  On or around September 28, 2015, plaintiff Zeller opened two retirement accounts with defendant Great Plains.  Ryan Thompson, along with John Kornitzer and John Shepley of Kornitzer attended plaintiff Zeller's execution of the agreement.  Much like the agreement with plaintiff Barnett, plaintiff Zeller's agreement appointed defendant Great Plains as the "Investment Manager" and defendant Kornitzer as "Investment Advisor."  The Zeller agreement further provided

-2-

that defendant Kornitzer would receive .00125 of the closing market value of assets each quarter for its investment advice.  Plaintiff Zeller also executed Statements of Investment Direction that directed the allocations of the retirement plans among eight Collective Trust Funds and that half of the total principal of the plans were to be invested in the Equity Fund and the Fixed Fund.  The Statements of Investment Direction also disclosed that defendant Kornitzer participates in the management of the Collective Trust Funds:

> An independent Advisor, Kornitzer Capital Management, Inc. (KCM) may be employed in connection with the management of the Common Trust Funds of the Personal Trust of [Great Plains]. Some Shareholders of [Great Plains] are employees of KCM. Some Shareholders of [Great Plains] are family members of Shareholders of KCM.  Some Shareholders of [Great Plains] are neither employees of KCM, nor family members of Shareholders of KCM.

(*Id.*, at 6.)  Defendants were responsible for choosing, administering, and structuring the investments that were in the Equity Fund and Fixed Fund.  Defendants invested the principal from the Barnett retirement plan and the Zeller retirement plan in corporate securities.  As of December 31, 2015, the Equity Fund held 30 percent of its total assets in corporate securities in Lions Gate.  The Fixed Fund held 79 percent of its total assets in Lions Gate.  The Lions Gate investments in both the Equity and Fixed Funds represented 35 percent of the entire Collective Trust Fund Portfolio.  In 2016, Lions Gate stock fell from its peak price of $41.07 in 2015 to $18.53 per share and plaintiffs' retirement plans sustained significant losses.

In March 2016, plaintiff Zeller contacted Thompson and another Kornitzer representative to discuss the losses to the retirement plans.  In an email, plaintiff Zeller sought assurances that defendants would take remedial action to mitigate losses:

> ... Going forward I need some reassurance that this is not [Kornitzer's] modus operandi. I realize that I bought into a fund and [Kornitzer] cannot trade with just me in mind, but, if in my individually managed portfolios there is a large Lionsgate exposure I would like to decrease that when feasible.
>
> Please copy [John] Shepley [of Kornitzer] in on this.

(*Id.*, at 8.)  Thompson replied, assuring plaintiff Zeller that defendants planned to spread some of his assets among other funds.  Despite any remedial measure that were promised or taken, the Zeller and Barnett retirement plans continued to sustain losses.

Plaintiffs filed the present action on March 13, 2017 alleging 1) Breach of Fiduciary Duty to Act Prudently 2) Breach of Fiduciary Duty – Failure to Diversify, 3) Negligent Misrepresentation, and 4) Breach of Contract.  Plaintiffs maintain that both defendants are fiduciaries, and that specifically defendant Kornitzer is a fiduciary because it "rendered investment advice for a fee as the "Investment Advisor." (*Id.*, at 10.)

**II.     Legal Standards**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Rule 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  To withstand a motion to dismiss under 12(b)(6), a complaint must contain "enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'"  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  A claim is plausible when "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). When the complaint contains well-pleaded factual allegations, a court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

**III.   Analysis**

Defendant Kornitzer filed a motion to dismiss all counts in the complaint arguing 1) it is not a fiduciary to either the Zeller or Barnett plans and therefore it is not liable under ERISA, 2) any common law claims are preempted by ERISA, and 3) plaintiffs lack standing and privity. Defendant Great Plains moves to dismiss only the state common law claims—Negligent Misrepresentation and Breach of Contract—arguing these claims are preempted by ERISA.

**a. ERISA Claims**

Defendant Kornitzer moves to dismiss Counts I and II of the amended complaint arguing it has no fiduciary relationship with plaintiffs. Plaintiffs argue these claims against defendant Kornitzer should survive a motion to dismiss because they sufficiently pleaded in the amended complaint that Kornitzer was a functional fiduciary because it provided investment advice for a fee.

Count I of the amended complaint alleges defendants breached their fiduciary duty to act prudently. Count II alleges breach of fiduciary duty for failure to diversify. The threshold question in every case charging breach of ERISA fiduciary duty is "not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Two types of fiduciaries exist under ERISA: named fiduciaries and functional fiduciaries. *See Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1184 (10th Cir. 2016). Functional fiduciaries are defined under 29 U.S.C. § 1002(21)(A). Under the statute, there are three means of becoming a functional fiduciary: 1) exercising any "discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," 2) rendering "investment advice for a fee or other compensation, direct or

indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so," or 3) having "any discretionary authority or discretionary responsibility in the administration of such plan."

In their amended complaint, plaintiffs claim that defendant Kornitzer owed them fiduciary duties as the appointed "Investment Advisor" under the plan agreements. Plaintiffs note that pursuant to the agreements, defendant Kornitzer rendered investment advice for a fee. And, according to the amended complaint, this advice "came in the form of quarterly individualized portfolio reviews and developing plains for 'ratcheting down exposure opportunistically' on a monthly basis. . . ." (Doc. 29, at 10.)

Defendant Kornitzer argues it is not a functional fiduciary under any of the statutory definitions. Specifically, Kornitzer claims that despite the fact it collected a fee as an "Investment Advisor," it was not a fiduciary to plaintiffs because it did not provide individualized investment advice for their plans, rather, it provided investment advice to all of defendant Great Plains' funds.

The Department of Labor issued a regulation describing under which circumstances a party renders "investment advice for a fee" to be considered a functional fiduciary:

> (1) A person shall be deemed to be rendering "investment advice" to an employee benefit plan only if:
> (i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and
> (ii) Such person either directly or indirectly (e.g., through or together with any affiliate)—
> (A) Has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or
> (B) Renders any advice described in paragraph (c)(1)(i) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan

> based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

29 C.F.R. § 2510.3–21(c).[1]  From this regulation, courts have compiled a number of factors to be used in determining whether a party is a fiduciary on the basis of providing investment advice for a fee: 1) the defendant provided individualized investment advice; 2) on a regular basis; 3) pursuant to a mutual agreement, arrangement, or understanding that 4) the advice would serve as a primary basis for the plan's investment decisions; and 5) the advice was rendered for a fee.  *See Walker v. Merrill Lynch & Co., Inc.*, 181 F. Supp. 3d 223, 232 (S.D.N.Y. 2016) (citing *F.W. Webb Co. v. State St. Bank & Trust Co.*, 09 Civ. 1241(RJH), 2010 WL 3219284, at * 8 (S.D.N.Y. Aug. 12, 2010)).

Importantly, courts have noted that this regulation—and the "mutual agreement" requirement in particular—"seeks to separate compensated investment advice—which properly gives rise to fiduciary status—from mere sales efforts touting the attributes of a security or investment."  *F.W. Webb Co.*, 2010 WL 3219284, at * 8.

To survive the motion to dismiss, plaintiffs must plead factual allegations that support the assertion that defendant Kornitzer was a functional fiduciary by providing investment advice for a fee. To support this assertion, plaintiffs claim, in the amended complaint, that pursuant to both the Barnett and the Zeller agreements, defendant Kornitzer was a named Investment Advisor and received .00125 of the closing market value of assets each quarter for its investment advice.  Both defendant Great Plains and defendant Kornitzer regularly provided plaintiff Barnett with quarterly statements of account and quarterly portfolio reviews.  Ryan Thompson, who allegedly is a representative of both Great Plains and Kornitzer, solicited plaintiff Zeller's business stating that "under Kornitzer's strategy

---

[1] An updated version of this regulation went into effect on June 9, 2017.  Defendant argues that the updated regulation should not apply retroactively and that the Trump Administration has delayed the applicability of the new regulation.  The court need not decide at this time what version of the regulation applies to the present case.

Great Plains offers investments with less volatility compared to other market funds." (Doc. 29, at 4.) Representatives from Kornitzer were present for the execution of the Zeller agreement, and plaintiff Zeller's Statements of Investment Direction outlines defendant Kornitzer's role as an "independent Advisor" employed in connection with the management of the Common Trust Funds of the Personal Trust of Great Plains. It also notes that many of the employees and shareholders of defendants are intertwined. And when plaintiff Zeller was concerned about losses to the fund, he emailed Ryan Thompson and wanted Kornitzer representatives copied on the email.

Based on a general review of caselaw, including cases both parties rely on in their briefs, it seems that determining whether a party is a functional fiduciary is a fact-intensive inquiry. At this point, the relationship between plaintiffs, defendant Great Plains, and defendant Kornitzer is not entirely clear. The court, however, finds that plaintiffs have pleaded enough facts to show that Kornitzer may have had enough involvement in plaintiffs' retirement plans that it is plausible they are liable for any breach of duty under ERISA. At this stage, the court finds that plaintiffs have met their burden.

Defendant Kornitzer also argues that Counts I and II should be dismissed against plaintiff Zeller because he lacks standing to bring a claim on behalf of his retirement plan because the Zeller plan was terminated in September 2016. Further, because the plan was overfunded when it was terminated, the plan incurred no damages.

Plaintiffs respond that because Zeller was a trustee, and not a plan participant, he is not precluded from seeking damages simply because the fund is closed and was allegedly overfunded at the time it was closed.

Defendants have not pointed to any authority that would support their assertion that a plan trustee is barred from seeking damages after a plan has been terminated. And the court is unable to

-8-

conclude from the attached exhibits, without further explanation, whether the fund was "overfunded" to preclude any liability. For these reasons, the court denies defendant Korntizer's motion to dismiss Counts I and II.

### b. Common Law Claims

Both defendant Kornitzer and defendant Great Plains move to dismiss Count II, plaintiff Zeller's claim for Negligent Misrepresentation, and Count III, both plaintiffs' claims for Breach of Contract, arguing these common law claims are preempted by ERISA.

"The plain language of ERISA provides that it shall preempt state laws that 'relate to any employment benefit plan.'" *Woodworker's Supply Inc., v. Principal Mut. Life Ins. Co*., 170 F.3d 985, 989 (10th Cir. 1999) (citing 29 U.S.C. § 1144(a)). The United States Supreme Court has found that the express preemption provisions of ERISA are "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987).

A cause of action "relates to" a benefit plan, and is preempted by ERISA, if it involves 1) laws regulating the type of benefits or terms of ERISA plans, 2) laws creating reporting, disclosure, funding, or vesting requirements for such plans, 3) laws providing rules for calculating the amount of benefits to be paid under such plans, or 4) laws and common-law rules providing remedies for misconduct growing out of the administration of such plans. *Woodworker's Supply, Inc.*, 170 F.3d at 990.

A cause of action alleging damages for preplan conduct, however, would not fall under the preemption provision. *See, e.g*., *id*. (finding a company's fraud claim against its insurer was not preempted by ERISA because the suit was against the seller of the insurance—not the plan administrator—and was based on preplan misrepresentations); *see also*, *Wilson v. Zoellner*, 114 F.3d 713, 720 (8th Cir. 1997) (finding "Missouri's efforts to prevent sellers of goods and services, including

benefit plans, from misrepresenting the contents of their wares or the scope of their services is 'quite remote from the areas with which ERISA is expressly concerned—reporting, disclosure, fiduciary responsibility, and the like.'"). And ERISA has "no bearing on [claims] 'which do not affect the relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries and the beneficiaries as such.'" *Woodworker's Supply, Inc*., 170 F.3d at 990.

Defendants both argue that plaintiff Zeller's negligent misrepresentation claim is preempted by ERISA because the claim directly relates to the management of the retirement plan. Plaintiff Zeller maintains that the claim is related to preplan conduct.

To state a claim for negligent misrepresentation, plaintiff must plead: 1) the person supplying the false information failed to exercise reasonable care or competence in obtaining or communicating the false information, 2) the person who relies upon the information is the person for whose benefit and guidance the information is supplied, and 3) the damages are suffered in a transaction that the person suppling the information intends to influence.

In the amended complaint, plaintiff Zeller claims that Ryan Thompson, who was an agent of or was holding himself out to be an agent of defendants, emailed plaintiff stating that 1) defendant Great Plains offers investments with less volatility as compared to market index funds 2) the Collective Trust Funds did not have any Lions Gate common stock in the Fixed Fund, and 3) the exposure to Lions Gate securities in the Fixed Fund did not greatly impact the fund's performance. Plaintiff Zeller alleges these representations were false and that he relied on this false information. He claims that as a result of his reasonable reliance on these false representations, the Zeller plans sustained damages.

Defendants argue that the negligent misrepresentation claim is preempted by ERISA because the damages claimed arise out of the management of the investments in the Equity and Fixed Funds—conduct that squarely falls within ERISA. Plaintiff Zeller responds that this is preplan conduct, and

that defendants' misrepresentations were intended to influence him into entering into an investment relationship.

In *Woodworker's Supply, Inc.*, the Tenth Circuit found that ERISA did not preempt a negligent misrepresentation claim an employer brought against its former insurer for misrepresentations that induced plan participation. 170 F.3d at 991. The suit, as noted by the court, was against the insurer "with respect to its preplan activity in its role as a seller of insurance, not as an administrator of an employee benefits plan." *Id.* The court found that allowing parties to seek damages for preplan fraud was consistent with the congressional intent of ERISA—to protect the interests of employees and other beneficiaries of benefit plans—and that a "state's efforts to prevent sellers of goods and services, including benefit plans, from misrepresenting . . . the scope of their services is 'quite remote from the area with which ERISA is expressly concerned—reporting, disclosures, fiduciary responsibility and the like.'" *Id*. at 992 (citing *Wilson*, 114 F.3d at 720).

But here, plaintiff Zeller's claimed damages are a result of the plan administration and the administrator's fiduciary duties, not defendants' misrepresentations as to the scope of their services. Zeller does not allege that but for the misrepresentations he would not have invested with defendants. Instead he claims that because of his reliance on the misrepresentations the retirement plan sustained damages. But, again, the plans sustained damages—loss of value—because of the plan administration and alleged breach of fiduciary duty, not because of the misrepresentations. And issues with the plan administration fall directly under the authority of ERISA.

For these reasons, the court finds that based on the allegations in plaintiff Zeller's amended complaint, plaintiff's claim for negligent misrepresentation is preempted by ERISA and is therefore dismissed.

Defendants also argue that the breach of contract claim brought by both plaintiffs should be dismissed as preempted by ERISA. Plaintiffs claim that they seek relief available under Kansas law to the extent that ERISA fails to govern the contractual rights and duties between them and defendants. Plaintiffs, however, failed to plead in the amended complaint any instances in which ERISA may not cover any breach of contractual rights. For this reason, plaintiffs' breach of contract claim is dismissed as it is preempted by ERISA.

In conclusion, the court finds that plaintiffs' Count III—Negligent Misrepresentation—and Count VI—Breach of Contract—are dismissed as preempted by ERISA. Counts I and II remain against both defendant Kornitzer and defendant Great Plains.

**IT IS THEREFORE ORDERED** that defendant Great Plains Trust Company's Motion to Dismiss Counts III and IV (Doc. 36) is granted.

IT IS FURTHER ORDERED that defendant Kornitzer Capital Management, Inc.'s Motion to Dismiss (Doc. 34) is granted in part and denied in part.

Dated February 23, 2018, at Kansas City, Kansas.

    s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**